# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA SMITH, ADMINSTRATRIX OF THE ESTATE OF MARTHA E. SMITH; PATRICIA SMITH; MARY J. SCOTT,<br>                    Plaintiffs,<br><br>            v.<br><br>ALBERT EINSTEIN MEDICAL CENTER, ET. AL.,<br>                    Defendants. | CIVIL ACTION<br><br>NO. 08-05689 |

## Memorandum

YOHN, J.                                                                                                June 11, 2009

Plaintiffs, Patricia Smith ("Patricia"), individually and as the executrix and/or administratrix of the estate of Martha E. Smith ("Martha") and Mary J. Scott ("Mary") individually, have filed this action pro se against: Albert Einstein Medical Center ("Albert Einstein"); Beth Duffy, CEO of Albert Einstein Medical Center; Dr. Robert Weisberg; Dr. Steven Lewis; Dr. Jerry Cohen; Dr. Kevin Hails; Dr. Robert Solit; Patricia Q. Imbesi, Esq.; Anne Maxwell, Esq.; Patricia Maisano, RN; Robert Stump; Fox Chase Cancer Center; Dr. Michael Millenson; Dr. Moshe Chasky; Dr. Roger Kyle; St. Agnes Continuing Care Center ("SACCC"); St. Agnes Vitas Hospice ("VITAS")[1]; Susan Mazzacano, RN; and Richard K. Heller, RN. Plaintiffs allege violations of Martha's constitutional rights, violations of the Emergency Medical

---

[1] Apparently, the proper name for this defendant is VITAS Healthcare Corporation Atlantic, which, in its motion to dismiss, notes that it was "incorrectly referred to in the complaint as St. Agnes Vitas Hospice." (Defs., VITAS Healthcare Corp. Atlantic, Susan Mazzacano, RN and Richard H. Heller, RN's Mot. Dismiss Pls.' Compl. at 2.)

Transfer and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (2006), and medical and legal malpractice, all arising out of events surrounding Martha's death. Presently before the court are motions to dismiss from all defendants for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), or both.[2] In addition, defendant Chasky filed a motion to dismiss for improper service pursuant to Rule 12(b)(5), and defendants Maisano, Stump, Millenson, Kyle, and Fox Chase Cancer Center have filed motions for a more definite statement pursuant to Rule 12(e). Defendants Weisberg, Lewis, Cohen, Millenson, Kyle, Duffy, Hails, Solit, Imbesi, Albert Einstein, Fox Chase Cancer Center, and SACCC have filed motions to dismiss for failure to file a Certificate of Merit as required by Pennsylvania Rule of Civil Procedure 1042.3. Defendants Millenson, Kyle, Maisano, and Fox Chase Cancer Center also filed praecipes to enter judgment due to plaintiffs' failure to file a certificate of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3. For the reasons that follow, the court will grant, without prejudice, the motions to dismiss for lack of subject matter jurisdiction and failure to state a claim. As a result, the court will dismiss as moot the remaining motions and praecipes for judgment.

I.      **Facts and Procedural History**[3]

In their pro se complaint, plaintiffs allege a catalogue of injuries that Mary and Patricia and their mother Martha suffered due to defendants' conduct from January 30, 2006 to February

---

[2] Because all nineteen defendants base their motions on similar grounds, raise similar issues, and make similar arguments the court will address their motions in one memorandum and order.

[3] As best it can, the court derives this recitation of the facts from plaintiffs' complaint—a disoriented narrative replete with non-specific assertions.

12, 2007, the day Martha died. From what the court can gather, plaintiffs' complaint concerns Martha's doctors' improper care of Martha, the doctors' withholding of information from Mary and Patricia, an improper transfer of Martha to SACCC or VITAS or both ("SACCC/VITAS"),[4] SACCC/VITAS's failure to provide life-saving medical treatment, and the removal of plaintiffs' power of attorney over Martha's care.

Defendants Drs. Weisberg, Lewis, and Cohen ("doctors") allegedly injured Martha and plaintiffs in the course of treating Martha. These doctors practice medicine at Albert Einstein Medical Center, where Martha was hospitalized from January 30, 2006 to February 5, 2007. According to plaintiffs, the doctors failed to administer appropriate diagnostic tests or appoint appropriate specialists for treatment of Martha's complaints. The doctors also failed to treat Martha's chronic renal disease with hemo-dialysis, or alternatively, the doctors discontinued hemo-dialysis without either the consent of Martha, Mary, or Patricia or a court order. Further, on November 21, 2006 and thereafter, the doctors denied that a lump on Martha's neck was cancerous and thus failed to diagnose or treat Martha's cancer. The doctors, or those under their supervision, also improperly administered medication to Martha by giving her either the wrong medication, no medication, or an overdose of medication. Plaintiffs also allege that doctors performed surgery on Martha without her or her guardian's consent, making the surgery illegal. Furthermore, Martha lacked the physical stability to under-go surgery, as beforehand doctors

---

[4] Plaintiffs appear to refer to St. Agnes Continuing Care Center and St. Agnes Vitas Hospice interchangeably. According to plaintiffs' complaint, both facilities accepted Martha with orders not to provide medical treatment and both facilities "failed to administer life saving medical treatment" to Martha. (Pls.' Compl. at 12.) Construing the complaint in a light most favorable to plaintiffs for the purposes of these motions, the court will treat allegations against SACCC as allegations against VITAS as well, and vice versa. Nevertheless, this treatment will have no ultimate effect on the final disposition of the motions before the court.

failed to treat her excessive weight loss. Despite this weight loss, not until a week after the surgery did doctors provide a feeding tube for Martha, according to plaintiffs. Plaintiffs also allege that the doctors denied plaintiffs' request to have Martha transferred to a hospital, instead of a medical center. Ultimately, according to plaintiffs, the doctors discontinued Martha's heart medications without her or her family's consent, and as a result Martha died.

In addition to the above allegations of improper care, plaintiffs allege that the doctors did not provide plaintiffs with adequate information about their treatment of Martha or her condition. Plaintiffs claim that the doctors failed to inform Martha's family about the decision to keep her at Albert Einstein against her and her family's wishes. The doctors also isolated plaintiffs from Martha by limiting Mary's and Patricia's visitation to one hour per day and later by barring visitation when Drs. Weisberg or Lewis were attending to Martha. One time, Dr. Weisberg threatened to have security remove either Patricia or Mary when one of them asked where the doctors were taking Martha for surgery.

Plaintiffs allege further improper conduct arising out of the transfer of Martha from Albert Einstein to SACCC/VITAS in the evening of February 5, 2007. In authorizing and ordering the transfer, Martha's doctors allegedly failed to provide proper discharge orders in violation of federal regulations. According to plaintiffs, the doctors did not include in the medical records information: that justified Martha's admission and continued hospitalization; that supported their diagnosis; and that described Martha's progress and response to medication. Additionally, the doctors transferred Martha with instructions to discontinue all medications and to deny Martha's family visitation, even though the doctors lacked a court order to do so. Finally, in executing the transfer, the doctors failed to inform or obtain consent from either Judge

Anna Lazarus, a Philadelphia Court of Common Pleas judge presiding over legal issues surrounding Martha's care, or Anne Maxwell, Martha's court-appointed attorney.

Upon arrival at SACCC/VITAS, according to plaintiffs, the facility accepted Martha and followed the accompanying order not to provide medical treatment. SACCC/VITAS also did not provide Martha with stabilizing treatment or an appropriate transfer, as required by EMTALA. At some point, SACCC/VITAS did not perform cardio-pulmonary resuscitation or other life-saving measures on Martha, even though she did not have a "do not resuscitate" order. Martha died on February 12, 2007 due to, according to plaintiffs, the failure of SACCC/VITAS to provide life-saving medical treatment, as the autopsy of Martha confirms. Plaintiffs also allege that no physician was available to treat Martha at the time of her death, as evidenced by defendant Heller, a nurse, "calling the death" of Martha. Plaintiffs allege that those treating Martha just before she died should have known that denying heart medication and dialysis would bring about her death.

Plaintiffs also allege injuries arising from the proceedings to determine legal authority for Martha's care. Plaintiffs claim that after they made arrangements to transfer Martha to Fox Chase Cancer Center, defendants sought "illegal" guardianship of Martha. Plaintiffs also allege that Patricia Imbesi filed a petition, presumably for guardianship of Martha, that described the feasability of a lung biopsy for Martha, but did not include the doctors' failure to treat Martha's renal disease or to diagnose her cancer. Plaintiffs further claim that after Patricia Maisano obtained guardianship of Martha, she authorized a lung resection on January 11, 2007 that left Martha unresponsive until her death approximately one month later. Plaintiffs further allege that

a subsequent guardian for Martha, Robert Stump, lacked medical credentials.[5]

Plaintiffs filed this complaint on December 8, 2008. Defendants Imbesi and Maxwell filed separate motions to dismiss pursuant to Rule 12(b)(6), to which plaintiffs replied. Defendants Weisberg, Lewis, and Cohen jointly filed motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Defendants Hails, Solit, Duffy, and Albert Einstein jointly filed motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Defendants Stump and Maisano each separately filed motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) and motions for a more definite statement pursuant to Rule 12(e). Defendants Milenson, Kyle, and Fox Chase Cancer Center jointly filed motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) and a motion for a more definite statement pursuant to Rule 12(e). Plaintiffs responded to all of these motions collectively. SACCC filed motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6), to which plaintiffs responded. Defendant Chasky filed motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(5), to which plaintiffs responded. Defendants Heller, Mazzacano, and VITAS filed motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6), to which plaintiffs responded.

## II. Discussion

Defendants argue that plaintiffs' complaint fails to set forth sufficiently the elements of their claims to establish that this court has jurisdiction over this matter or, at least, that plaintiffs have cognizable claims. In response, plaintiffs repeat allegations of their complaint, present new allegations, and discuss procedural matters concerning this litigation.

---

[5] Plaintiffs also set forth allegations of injuries caused by Judge Lazarus, but because plaintiffs have not listed her as a defendant in the caption, the court will not consider these allegations. *See* Fed. R. Civ. P. 10 ("The title of the complaint must name all parties."). Furthermore, even if the complaint were to list Judge Lazarus, she would, of course, be entitled to judicial immunity.

A. **Standards of Review**[6]

A motion to dismiss under Rule 12(b)(1) challenges the existence of subject matter jurisdiction. In responding to this challenge, the plaintiff bears the burden of persuasion, *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); however, the plaintiff's burden is light, *Dugan v. Coastal Indus., Inc.*, 96 F. Supp. 2d 481, 482-83 (E.D. Pa. 2000). In evaluating a motion to dismiss pursuant to Rule 12(b)(1), the court must first determine whether the motion presents either a facial or a factual challenge to subject matter jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). As the court will explain more fully below, defendants make a solely facial attack. Facial attacks "contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true," *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300 (3d Cir. 2002) (citations omitted), and draw reasonable inferences in favor of the plaintiff, *see Mortensen*, 549 F.2d at 891. The court may properly dismiss the claim only where it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where [the claim] is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "[U]nder Rule 12(b)(6) the defendant has the

---

[6] When a motion under Rule 12 is "based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 1001, n.7 (D. Md. 1985) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350, at 548 (1969)).

burden of showing no claim has been stated." *Kehr Packages, Inc.*, 926 F.2d at 1409. When evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom must be viewed in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and alterations omitted). A plaintiff must show a "plausible" or "reasonably founded hope" of success. *Id.* at 556, 559 (internal quotation marks and citations omitted). Nevertheless, "[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

In the case of pro se plaintiffs, the court should construe the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "A pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that [plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines*, 404 U.S. at 520-21).

**B.     Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction**

Plaintiffs claim that his court has subject matter jurisdiction over this matter on the basis of both diversity of citizenship, presumably pursuant to 28 U.S.C. § 1332, and federal question, pursuant to 28 U.S.C. § 1331. Those defendants who raise a 12(b)(1) challenge argue that the complaint itself lacks pleadings sufficient to warrant jurisdiction; therefore, they make a facial challenge. (*See, e.g.*, Mot. of Def. Robert Stump to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) ¶ 7.) Consequently, the court will accept plaintiffs' allegations as true and draw reasonable inferences therefrom in their favor.

Those defendants challenging subject matter jurisdiction argue that plaintiffs have failed to allege complete diversity. Diversity jurisdiction requires complete diversity between the parties. *See* 28 U.S.C. § 1332(a)(1); *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996). In other words, no single plaintiff may be a citizen of the same state as any single defendant. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806), *overruled on other grounds by*, *Louisville, Cincinnati & Charleston R.R. Co. v. Letson*, 43 U.S. 497, 555-56 (1844) (regarding corporate citizenship); *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 290 (3d Cir. 1998). In their complaint, plaintiffs identify themselves as citizens of Pennsylvania, but fail to allege the citizenship of any defendant.[7] Without factual allegations supporting diversity of citizenship, the complaint on its face can not establish subject matter jurisdiction under § 1332.[8]

---

[7] At best, plaintiffs allege that certain defendants, specifically VITAS and Patricia Maisano, are "located" in Pennsylvania. Plaintiffs also allege that Drs. Weisberg, Lewis, and Cohen all practice medicine in Pennsylvania. These allegations do not establish the state citizenship of these defendants.

[8] It seems all but certain that at least one, and more likely many, of the defendants are citizens of Pennsylvania, thereby defeating diversity jurisdiction, even if the plaintiffs were to allege citizenship of the defendants in an amended complaint.

Plaintiffs also plead subject matter jurisdiction pursuant to 28 U.S.C. § 1331[9] for claims arising under federal law, specifically violations of constitutional rights, presumably pursuant to 42 U.S.C. § 1983, and violations of the EMTALA. Those defendants challenging jurisdiction argue that plaintiffs fail to allege that any defendant acted under color of state law in allegedly violating plaintiffs' constitutional rights, as is required for § 1983 claims. Construing plaintiffs' pro se complaint liberally, the court finds that of the nineteen defendants named in the complaint, plaintiffs allege violations of constitutional rights against only defendants Weisberg, Lewis, and Cohen. Plaintiffs do not provide even a hint as to how any of these particular defendants acted under color of state law in allegedly injuring plaintiffs. Without these allegations and given the complaint's overall thrust as a medical malpractice action, plaintiffs' § 1983 claims clearly appear "immaterial and made solely for the purpose of obtaining jurisdiction," if not "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682-83. Therefore, the court lacks subject matter jurisdiction over plaintiffs' claims of violations of civil rights and, as to these claims, the court will grant defendants' motions to dismiss pursuant to Rule 12(b)(1).

As to subject matter jurisdiction based on plaintiffs' EMTALA claim, SACCC argues that because plaintiffs do not set forth any element of a proper EMTALA claim, plaintiffs do not present a claim arising under federal law and thus the court lacks jurisdiction. "[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction," because as a question of law, the court must decide it "after

---

[9] Plaintiffs actually cite 28 U.S.C. § 41, apparently in reference to a predecessor to § 1331. *See* 28 U.S.C. § 1331 (explaining in historical notes that § 1331 is "[b]ased on Title 28 U.S.C., 1940 ed., § 41(1)"). Construing plaintiffs' complaint liberally, the court presumes plaintiffs meant § 1331.

and not before the court has assumed jurisdiction over the controversy." *Bell*, 327 U.S. at 682. Because essentially SACCC attacks plaintiffs' EMTALA claim for failure to state a proper cause of action, defendant's argument does not appropriately support dismissal for want of jurisdiction and more properly applies to defendant's Rule 12(b)(6) challenge. Consequently, the argument must fail as to SACCC's 12(b)(1) motion to dismiss.

Despite defendant's failed argument, the court on its own must determine whether it has jurisdiction over the claim. *See Golden ex rel. Golden v. Golden*, 382 F.3d 348, 354 (3d Cir. 2004) ("The federal courts themselves, of course, have a continuing obligation to investigate their jurisdiction over the matters before them."), *superseded on other grounds by Marshall v. Marshall*, 547 U.S. 293 (2006). Plaintiffs support their EMTALA claim with allegations that Martha did not receive stabilizing treatment at SACCC/VITAS. Making all inferences in pro se plaintiffs' favor, plaintiffs provide at least minimal foundation for their EMTALA claim. *See* 42 U.S.C. § 1395dd(b) (2006) (requiring hospital to provide stabilizing treatment in certain circumstances). Because plaintiffs do not make an insubstantial or frivolous claim under EMTALA, plaintiffs meet their light burden to show that the court has subject matter jurisdiction of this federal law claim. *Bell*, 327 U.S. at 682-83. Because the court has jurisdiction, it will deny SACCC's motion to dismiss pursuant to Rule 12(b)(1).

### C. Defendants' Motions to Dismiss for Failure to State a Claim

Defendants argue that plaintiffs' complaint fails to allege the elements of a cause of action for violations of constitutional rights or the EMTALA. Plaintiffs do not confront defendants' arguments head on, but instead resort to responding with additional factual allegations and revised prayers for relief. As explained above, the court has original jurisdiction

-11-

over only plaintiffs' EMTALA claim. Because plaintiffs bring their EMTALA claim against SACCC/VITAS, the court need consider only the motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) from SACC and VITAS.

Plaintiffs appear to allege that SACCC/VITAS violated the EMTALA when it failed to stabilize Martha from the time she arrived at SACCC/VITAS until her death. The EMTALA contains an express private cause of action provision for individuals harmed by violations committed by "participating hospitals." 42 U.S.C. § 1395dd(d)(2)(A).[10] The EMTALA provides for two different types of claims: (1) a screening claim, where an individual presents himself at a hospital emergency room and the hospital fails to provide "appropriate medical screening"; or (2) a stabilization claim, where an individual comes to a hospital with an emergency medical condition and the hospital fails to provide "further medical examination and such treatment as may be required to stabilize the medical condition" or fails to "transfer of the individual to another medical facility" in accordance with other provisions in the EMTALA. *Id.* § 1395dd(a), (b); *Love v. Rancocas Hosp.*, No. Civ. A. 01-5456, 2005 WL 1541052, at *3 (D.N.J. June 29, 2005) (noting that "EMTALA provides two avenues for plaintiffs to make claims"—screening and stabilization claims). Because the complaint alleges that SACCC/VITAS failed to stabilize Martha, plaintiffs appear to make a stabilization claim, not a screening claim.

For a stabilization claim, plaintiffs "must establish that: (1) the patient had an emergency

---

[10] "The term 'participating hospital' means a hospital that has entered into a provider agreement under section 1395cc [referring to Medicare program] of this title." 42 U.S.C. § 13995dd(e)(2).

medical condition,[11] (2) the hospital actually knew of that condition, (3) the patient was not stabilized before being transferred." *Mazurkiewicz v. Doylestown Hosp.*, 223 F. Supp. 2d 661, 665 (E.D. Pa. 2002) (noting Third Circuit has not addressed required showing for EMTALA claim and relying on Fourth Circuit standard). A hospital's duty to stabilize an emergency medical condition does not apply where the patient is not transferred. *Harry v. Marchant*, 291 F.3d 767, 775 (11th Cir. 2002). Moreover, the duty to stabilize ends when a hospital admits the patient, provided the hospital does not do so to avoid EMTALA liability. *Mazurkiewicz v. Doylestown Hosp.*, 305 F. Supp. 2d 437, 447 (E.D. Pa. 2004).

Here, plaintiffs fail to set forth any of the elements of an EMTALA stabilization claim. Plaintiffs do not allege that SACCC/VITAS qualifies as a participating hospital under the EMTALA. Plaintiffs do not identify the particular emergency medical condition Martha had when she arrived at SACCC/VITAS. Plaintiffs provide no factual allegations supporting the actual knowledge of that condition that SACCC/VITAS had. Although plaintiffs do allege that SACCC/VITAS failed to stabilize Martha, most importantly plaintiffs do not allege that the failure to stabilize occurred in the context of a transfer or discharge or other circumstances that gives rise to a duty under EMTALA. Because plaintiffs make no allegation that SACCC/VITAS admitted Martha to escape EMTALA liability, any duty to stabilize under EMTALA ended when SACCC/VITAS admitted Martha. *See Mazurkiewicz*, 305 F. Supp. 2d at 447. With nothing more than an allegation that SACCC/VITAS failed to provide "stabilizing treatment," it appears, no

---

[11] The EMTALA defines an "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in– (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A).

matter how the court construes the complaint, beyond doubt that plaintiffs can prove no set of facts supporting an EMTALA claim sufficient to entitle plaintiffs to relief.

Instead, it appears plaintiffs inappropriately try to invoke the EMTALA as a ground for what amounts to a medical malpractice claim against SACCC/VITAS. *See Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994) ("EMTALA is not a substitute for state law malpractice actions, and was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence."); *Davis v. Twp. of Paulsboro*, 424 F. Supp. 2d 773, 779 (D.N.J. 2006) (quoting *Power*, 42 F.3d at 856). Because plaintiffs have not made a claim for which the court can grant relief, the court will grant defendants' motions to dismiss plaintiffs' EMTALA claim.

### D. Plaintiffs' State Law Claims

The gravamen of plaintiffs' complaint consists of a state law claim for negligence based on the medical or legal malpractice of, presumably, all defendants. Having dismissed plaintiffs' other claims, the court can have jurisdiction over these state law claims only on the basis of supplemental jurisdiction, as set forth in 28 U.S.C. § 1367. Under § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Pursuant to § 1367(c)(3), however, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." *See also Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284-85 (3d Cir. 1993) (embracing §1367(c)'s discretionary

language). Here, on the basis of the court's original subject matter jurisdiction over plaintiffs' EMTALA claim, the court could have supplemental jurisdiction over plaintiffs' state law claims. Nevertheless, because the court will dismiss plaintiff's EMTALA claim, no federal claims of original jurisdiction will remain. Therefore, the court will use its discretion to decline to exercise supplemental jurisdiction over plaintiffs' state law claims. Accordingly, the court will dismiss plaintiffs' state law claims for lack of jurisdiction and therefore will dismiss as moot defendants' motions to dismiss any state law claims for medical or legal malpractice.

### III. Conclusion

Plaintiffs do not set forth claims for which this court has jurisdiction or can grant relief. Because plaintiffs' claims of constitutional rights violations lack allegations of conduct by any defendant acting under color of state law, the court does not have jurisdiction over plaintiffs' § 1983 claims. Consequently, as to these claims, the court will grant defendants' motions to dismiss pursuant to Rule 12(b)(1). Because it appears beyond doubt that plaintiffs have no viable EMTALA claim, the court can not grant relief on that basis. Consequently, the court will grant defendants' motion to dismiss pursuant to Rule 12(b)(6) as to this claim. Because the court will dismiss all federal claims here, the court will properly decline to exercise jurisdiction over plaintiffs' remaining state law claims under § 1367.[12] Although it appears to the court that plaintiffs will not be able to amend their complaint to correct its deficiencies, because they are acting pro se, the court will dismiss the complaint without prejudice and with right to amend, if

---

[12] In dismissing all of plaintiffs' claims and thus the entire complaint, the court renders moot defendants' motions for a more definite statement pursuant to Rule 12(e).

they can do so.[13] *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). An appropriate order follows.

---

[13] Defendants have also filed motions to dismiss based on plaintiffs' failure to file a certificate of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3. If plaintiffs desire to file an amended complaint, they may want to consider before doing so whether this requirement would prove fatal to their claims, even if they could overcome the jurisdictional hurdles.