IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA SMITH, ADMINSTRATRIX OF THE ESTATE OF MARTHA E. SMITH; PATRICIA SMITH; MARY J. SCOTT, <br>  Plaintiffs, <br> <br> v. <br> <br> ALBERT EINSTEIN MEDICAL CENTER, ET AL., <br>  Defendants. | CIVIL ACTION <br> <br> NO. 08-05689 |

**Memorandum**

YOHN, J.                                                                                                    August 12, 2009

      Plaintiffs, Patricia Smith ("Patricia"), individually and as the administratrix of the estate of Martha E. Smith ("Martha"), and Mary J. Scott ("Mary"), individually, have filed this action pro se against: Albert Einstein Medical Center ("AEMC"); Beth Duffy; Dr. Robert Weisberg; Dr. Steven Lewis; Dr. Jerry Cohen; Dr. Kevin Hails; Dr. Robert Solit; Patricia Q. Imbesi, Esq.; Anne Maxwell, Esq.; Patricia Maisano, RN; Robert Stump; Fox Chase Cancer Center ("FCCC"); Dr. Michael Millenson; Dr. Moshe Chasky; Dr. Roger Kyle; St. Agnes Continuing Care Center ("SACCC"); VITAS Healthcare Corporation Atlantic ("VITAS"); Susan Mazzacano, RN; and Richard K. Heller, RN. Plaintiffs' lawsuit arises out of events surrounding Martha's death and the medical care she received from defendants. Plaintiffs' claims include: violations of the Emergency Medical Transfer and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (2006); violations of constitutional and civil rights; medical and legal professional liability; and fraud.

      Presently before the court are motions to dismiss from all defendants for failure to state a

claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Additionally, all defendants, except Maxwell, Imbesi, and SACCC, filed motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defendant Chasky filed a motion to dismiss for improper service pursuant to Rule 12(b)(5), and defendants Maisano and SACCC filed motions for a more definite statement pursuant to Rule 12(e).  Defendants Weisberg, Lewis, Cohen, Millenson, Kyle, and Fox Chase Cancer Center filed motions to dismiss for failure to file a Certificate of Merit as required by Pennsylvania Rule of Civil Procedure 1042.3.[1]  For the reasons that follow, the court will grant the motions to dismiss for failure to state a claim and dismiss plaintiffs' amended complaint.  As a result, the court will dismiss the remaining motions as moot.[2]

## I.     Facts and Procedural History

Plaintiffs filed their original complaint on December 8, 2008.  Following a plethora of motions from all nineteen defendants, the court dismissed the complaint, without prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Several days later, plaintiffs filed an amended complaint.  Given the amended complaint's disjointed nature,[3] the court finds it

---

[1] Defendants Duffy, Hails, Solit, Maisano, Mazzacano, Heller, AEMC, and VITAS cited plaintiffs' failure to file certificates of merit as grounds for dismissal pursuant to Rule 12(b)(6).

[2] The motions of all nineteen defendants are based on similar grounds, raise similar issues, and rely on similar arguments; therefore, the court will address them all in one memorandum and order.

[3] Plaintiffs' amended complaint consists of a rambling, non-sequential discourse that mixes facts and legal assertions set forth in unnumbered paragraphs and written in convoluted prose.  The following sentence typifies the nature of the amended complaint:
> All nineteen defendants failed and refused to obtain, secure and provide emergency medical treatment, screening, stabilizing, and appropriate transfer, with the fraudulent concealment of the decedent,

more efficient to summarize the facts in a list rather than a narrative.

- For a period sometime before February, 2007, Martha was a patient at AEMC.

- While at AEMC, Martha received care from defendants Weisberg, Lewis, Cohen, and Solit. (Am. Compl. 7.)

- These physicians failed to treat Martha's renal failure properly, causing Martha physical and emotional suffering. (*Id.*) Further, these physicians failed to diagnose and treat Martha's uremia and azotemia and to provide hemodialysis and cancer treatment. (*Id.*)

- These physicians also "failed to properly [sic] assess and treat" Martha, causing a nine month delay in getting her cancer treatment from the time the cancer was detected. (*Id.*)

- These physicians also failed "to medically [sic] treat signs and symptoms leading up to electrolyte imbalance, respiratory distress[,] and cardiac arrest." (*Id.*)

---

Mrs. Martha E. Smith, medical history, treatment, non-consent clinical research trials and medical records deviating from professional standards of care in causing the inhumane death of the decedent Mrs. Martha E. Smith on February 12, 2007, confirmed by Drexel University College of Medicine, Department of Pathology . . . confirmed and verified that a court appointed guardian, Patricia Maisano instated on December 22, 2006, that patient/decedent Mrs. Martha E. Smith, was not stable for a wedge resection, biopsy, on January 11, 2007, criminal assault, authorized by court appointed, un-bonded federal/state guardian Patricia Maisano, owner/CEO of Ikor Inc., and Dr. Robert W. Solit, Dr Robert Weisberg, Dr. Steven Lewis, Dr. Jerry Cohen, at Albert Einstein Medical Center.
(Am. Compl. 4.)

- These physicians also kept Martha isolated from her "family and loved ones." (*Id.*)

- On December 22, 2006, AEMC, through its attorney, Patricia Imbesi, filed a fraudulent emergency guardian petition, presumably for defendant Maisano to have guardianship over Martha. (*Id.* 5.)

- According to plaintiffs, Philadelphia Orphans Court Judge Ann Lazarus improperly granted the above guardianship petition without sufficient evidence and without providing an attorney for Martha, both in violation of plaintiffs' civil and constitutional rights. (*Id.* 6, 8, 11.) Additionally, Judge Lazarus did not recuse herself from the matter, even though AEMC was represented by Ballard, Spahr, Andrews & Ingersoll, LLP, allegedly the judge's former law firm and a campaign contributor to the judge. (*Id.* 9.) The plaintiffs did not name Judge Lazarus as a defendant.

- On January 11, 2007, Martha underwent a lung wedge resection biopsy, a surgery to which she did not consent and for which she lacked the physical stamina to endure, but which her court-appointed guardian, defendant Maisano, authorized anyway. (*Id.* 4, 5, 6, 11, 13, 14-15.)

- On January 22, 2007, laboratory tests revealed that those treating Martha withheld providing hemodialysis to her, causing her lethargy, confusion, seizures, unconsciousness, heart failure, coma, and death. (*Id.* 5.)

- On February 5, 2007, defendant Moshe Chasky misrepresented himself as a physician in a letter to plaintiffs. (*Id.* 12, 13.) According to plaintiffs,

>   Chasky is a medical student trainee, who received his medical degree from a Tel Aviv university that is not accredited by a United States medical profession agency. (*Id.* 12.)[4]

- On February 5, 2007, AEMC discharged Martha and transferred her to SACCC, even though Martha was lethargic, non-responsive, and in a state of confusion. (*Id.* 3, 7.) Martha's court-appointed attorney, defendant Maxwell, did not know about the transfer in advance. (*Id.* 3.)

- At SACCC, Martha did not receive emergency medical treatment, including hemodialysis, chemotherapy, fluids, heart medication, and nutrition. (*Id.* 16.) Defendants Mazzacano and Heller likewise failed to provide emergency medical treatment and screening and also, themselves failed to call an emergency code. (*Id.* 2.)

- Martha died on February 12, 2007. (*Id.* 6.)

From July 2, 2009 through July 13, 2009, defendants filed their various motions, as listed previously. On July 13, 2009 plaintiffs responded to the motions from defendants Duffy, Hails, Solit, Maxwell, Imbesi, Stump, Maisano, AEMC, and SACCC. Plaintiffs did not respond to the other motions. Defendant Stump replied to plaintiffs' response.

## II.     Standards of Review

---

[4] Plaintiffs also allege that Dr. William Tester, who conducted an oncology consult for Martha at AEMC and determined that treatment for Martha's cancer would "outweigh the potential benefits," did not have license to practice medicine. Plaintiffs also allege that neither Dr. Douglas Flieder nor Dr. Hossein Borghaei, both of whom prepared a surgical pathology consultation report for Martha at FCCC, had a pathologist's license. Plaintiffs do not name any of these physicians as defendants.

When a motion under Rule 12 is "based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 1001, n.7 (D. Md. 1985) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350, at 548 (1969)).  A motion to dismiss under Rule 12(b)(1) challenges the existence of subject matter jurisdiction, and in response to the motion, the plaintiff bears the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  "[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated." *Kehr Packages, Inc.*, 926 F.2d at 1409.  When evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom must be viewed in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and alterations omitted).  A plaintiff must show a "plausible" or "reasonably founded hope" of success. *Id.* at 556, 559 (internal quotation marks and citations omitted).  Nevertheless,

"[t]he issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

In the case of a pro se plaintiff, the court should construe the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "A pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines*, 404 U.S. at 520-21).

**III.   Discussion**

Defendants argue that the court lacks subject matter jurisdiction on the basis of diversity of citizenship and federal question with respect to plaintiffs' claims based on civil rights violations. Plaintiffs plead diversity between themselves and defendants Maisano and VITAS, but they do not make similar allegations with respect to any other defendant. Because plaintiffs do not allege complete diversity between the parties, the court does not have subject matter jurisdiction on the basis of diversity of citizenship.[5] *See* 28 U.S.C. § 1332 (providing original jurisdiction in suits between citizens of different states); *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996) (requiring complete diversity). Nevertheless, plaintiffs make a claim based on violations of the EMTALA, a federal statute. Therefore, the court has jurisdiction on the basis of

---

[5] Plaintiffs' original complaint also failed to allege complete diversity, as the court determined in granting defendants' motions to dismiss. *See Smith v. Albert Einstein Med. Ctr.*, Civil Act. No. 08-05689, slip op. at 8-9, 2009 WL 1674715, at *4 (E.D. Pa. June 11, 2009). Plaintiffs' amended complaint did not correct this deficiency.

a federal question presented. *See* 28 U.S.C. § 1331 (providing original jurisdiction for suits arising under federal law). Accordingly, the court will deny defendants' motion to dismiss for lack of subject matter jurisdiction.

Defendants also argue that plaintiffs have failed to state a claim for which the court can grant relief and in support cite at least one of these reasons: (1) the amended complaint contains no allegations against a state actor as required for violations of constitutional rights; (2) the amended complaint does not set forth a proper claim for violations of the EMTALA; (3) plaintiffs failed to file a timely certificate of merit for their state law professional liability claim. In response, plaintiffs repeat allegations from their amended complaint and claim that defendants' response amounts to ignorance of federal law that warrants being found in contempt of court.

Plaintiffs' allegations of constitutional and civil rights violations appear to pertain to legal proceedings relating to their loss of guardianship over Martha's care.[6] "To state a § 1983 claim, a plaintiff must [allege] the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.")). Plaintiffs' allegations concern defendant Imbesi and Judge Lazarus and their conduct surrounding the petition to deny

---

[6] Reading the pro se amended complaint liberally, the court presumes plaintiffs bring their constitutional and civil rights claims under 42 U.S.C. § 1983, although plaintiffs do not reference this statute in their amended complaint.

plaintiffs guardianship over Martha.  Plaintiffs do not allege any facts suggesting that Imbesi acted under color of state law and plaintiffs fail to name Judge Lazarus as a defendant.  Without allegations of constitutional violations committed by a state actor, plaintiffs' § 1983 claims must fail and the court will dismiss them accordingly.

Plaintiffs also allege that all nineteen defendants committed violations of the EMTALA.  Several defendants argue that plaintiffs' amended complaint lacks allegations of the required elements for an EMTALA claim.  The EMTALA contains an express private cause of action provision for individuals harmed by violations committed by "participating hospitals."  42 U.S.C. § 1395dd(d)(2)(A).[7]  Because a cause of action under the EMTALA exists only against hospitals, the court need consider plaintiffs' claim only as to defendants AEMC, FCCC, SACCC, and VITAS, as the remaining defendants are individuals.  Moreover, plaintiffs provide no allegation that any one of AEMC, FCCC, SACCC, or VITAS qualifies as participating hospitals governed by the EMTALA.  Despite the absence of this crucial allegation, the court, reading the pro se amended complaint liberally, will presume that EMTALA governs the hospitals and medical facilities in question as in all likelihood EMTALA does apply to them.

The EMTALA provides for two different types of claims: screening and stabilization.  *See* 42 U.S.C. § 1395dd(a), (b); *Love v. Rancocas Hosp.*, No. Civ. A. 01-5456, 2005 WL 1541052, at *3 (D.N.J. June 29, 2005) (identifying two types of EMTALA claims).  Plaintiffs allege both screening and stabilization claims.

Under EMTALA's screening provision, for "a hospital that has a hospital emergency

---

[7] "The term 'participating hospital' means a hospital that has entered into a provider agreement under section 1395cc [referring to Medicare program] of this title."  42 U.S.C. § 13995dd(e)(2).

department, if any individual . . . comes to the emergency department . . . [seeking] examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination." 42 U.S.C. § 1395dd(a). Crucial to any screening claim, the plaintiffs must allege that the "hospital [failed to] apply its standard of screening uniformly to all emergency room patients." *Davis v. Twp. of Paulsboro*, 424 F. Supp. 2d 773, 779 (D.N.J. 2006) (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994)); *see also, e.g.*, *Nolen v. Boca Raton Cmty. Hosp. Inc.*, 373 F.3d 1151, 1155 (11th Cir. 2004) ("So long as the [h]ospital gave to [plaintiff] the same quality screening that it would have given a similarly situated outpatient, there is no violation of the EMTALA."); *Hunt v. Lincoln County Mem'l Hosp.*, 317 F.3d 891, 894 (8th Cir. 2003) ("EMTALA focuses on uniform treatment of patients presented in hospital emergency departments."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 797 (10th Cir. 2001) ("EMTALA's requirement of an 'appropriate screening examination' undeniably requires [a hospital] to apply uniform screening procedures to all individuals coming to the emergency room."). As to plaintiffs' screening claim, plaintiffs fail to allege that Martha presented herself to the emergency room of any of these facilities, assuming at least one of them has an ER, or that any defendant conducted any screening, or that any screening conducted was not done in a uniform manner. In short, plaintiffs have failed to allege any of the elements of a screening claim.

Under EMTALA's stabilization provision, if "an[] individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either . . . treatment . . . required to stabilize the medical condition, or . . . transfer of the individual to another medical facility," in the manner prescribed by the EMTALA. 42 U.S.C. §

1395dd(b). Thus, for a stabilization claim, plaintiffs "must establish that: (1) the patient had an emergency medical condition, (2) the hospital actually knew of that condition, (3) the patient was not stabilized before being transferred."[8] *Mazurkiewicz v. Doylestown Hosp.*, 223 F. Supp. 2d 661, 665 (E.D. Pa. 2002) (noting Third Circuit has not addressed required showing for EMTALA claim and relying on Fourth Circuit standard instead). "The term 'to stabilize' means, with respect to an emergency medical condition . . ., to provide such medical treatment of the condition [needed] to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(A).

Plaintiffs allege that Martha's transfer from AEMC to SACCC occurred in violation of the EMTALA's stabilization provision.[9] Indeed, liability under this provision can only arise in the context of a transfer or discharge. *See Harry v. Marchant*, 291 F.3d 767, 775 (11th Cir. 2002); *Mazurkiewicz*, 223 F. Supp. 2d at 665; *see also* 42 U.S.C. § 1395dd(e)(4) (defining transfer to include discharge). Nevertheless, plaintiffs fail to allege several other required elements of a stabilization claim. Plaintiffs do not allege any facts showing that Martha came to AEMC with, or even developed at AEMC, an emergency medical condition as defined under EMTALA. *See* 42 U.S.C. § 1395dd(e)(1)(A). Even assuming plaintiffs did make this allegation,

---

[8] The EMTALA defines an "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in– (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A).

[9] Because plaintiffs make no allegations about the role either VITAS or FCCC played in this transfer, plaintiffs have not set forth a viable EMTALA claim against these parties.

plaintiffs provide no factual allegations to show that AEMC had actual knowledge of this emergency medical condition.  *See Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 145 (4th Cir. 1996) ("[EMTALA] does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they should have been aware . . . [because] EMTALA [is not] . . . coextensive with malpractice claims for negligent treatment."); *Mazurkiewicz*, 223 F. Supp. 2d at 665 (explaining that EMTALA requires "plaintiff [to] demonstrate that the hospital actually knew of [patient's] emergency medical condition" and citing numerous circuit court cases).

Instead, plaintiffs' allegations concern only Martha's actual transfer, specifically that during the transfer Martha was unresponsive to stimuli and generally lethargic, according to medical staff.  These observations of Martha's alleged condition do not amount to an allegation that defendants failed to stabilize Martha; that is, defendants failed to provide treatment that would ensure that, within reasonable medical probability, the transfer would not cause Martha material deterioration.  *See* 42 U.S.C. § 1395dd(e)(3)(A) (defining term "to stabilize").  In short, plaintiffs have failed to set forth the required elements of a stabilization claim.  Because plaintiffs have not alleged facts that amount to a valid EMTALA claim, either a screening or stabilization claim, the court will grant defendants' motions to dismiss for failure to state a claim.

Plaintiffs' remaining claims for legal and medical malpractice and fraud arise under state law, over which the court has supplemental jurisdiction at its discretion.  *See* 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284-85 (3d

Cir. 1993) (embracing §1367(c)'s discretionary language). Because plaintiffs' amended complaint presents a state law claim for "medical/legal [sic] professional liability," (Am. Compl. 16), defendants argue that plaintiffs needed to file a certificate of merit within sixty days of filing the original complaint in accordance with Pennsylvania Rule of Civil Procedure 1042.3,[10] which courts have construed as substantive law. *See Scaramuzza v. Sciolla*, 345 F. Supp. 2d 508, 510 (E.D. Pa. 2004) (applying "Pennsylvania certificate of merit rule . . . as controlling, substantive state law"); *see also Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 255 (E.D. Pa. 2008) (pointing out "Pennsylvania's consistent precedent that amendments to a complaint do not provide the plaintiff with a restarted period in which to file a [certificate of merit]"); *McElwee Group, LLC v. Mun. Auth. of Borough of Elverson*, 476 F. Supp. 2d 472, 475 (E.D. Pa. 2007) (finding that "failure to submit . . . certificate [of merit] is a possible ground for dismissal . . .

---

[10] The rule provides:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
    (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
    (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
    (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R.C.P. No. 1042.3(a)(1)-(3).

[pursuant to] motion to dismiss). Although plaintiffs filed their original complaint 239 days ago, they have yet to file a certificate of merit as of the date of this memorandum. Due in part to this failure, the court will decline to exercise its discretion to assert supplemental jurisdiction over plaintiffs' state law malpractice claims. Accordingly, the court will dismiss plaintiffs' medical and legal malpractice claims.

To sustain their claim of fraud, plaintiffs must plead: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). Plaintiffs allege that defendant Chasky misrepresented himself as a doctor in a letter to plaintiffs about Martha's condition. Even presuming the truth of this alleged misrepresentation, which the court must for the purposes of this motion, plaintiffs do not allege: the materiality of this misrepresentation, defendant Chasky's intent to mislead plaintiffs, plaintiffs' justifiable reliance on the misrepresentation, or any resulting injury from the misrepresentation. Due in part to plaintiffs' deficient fraud claim, the court will decline to exercise its discretion to assert supplemental jurisdiction over this claim.

In conclusion, plaintiffs' amended complaint fails to cure any of the deficiencies that warranted dismissal of the first complaint. *See Smith*, slip op. at 15, 2009 WL 1674715, at *7. As before, plaintiffs do not allege complete diversity. As before, plaintiffs do not allege facts showing that any defendant acted under color of state law in denying plaintiffs' constitutional or civil rights. Although plaintiffs paraphrase certain provisions of the EMTALA, plaintiffs fail to plead the necessary elements of an EMTALA claim. The court declines to exercise its discretion

to assert supplemental jurisdiction over plaintiffs' state law medical and legal malpractice claims, especially in light of plaintiffs' failure to procure certificates of merit, as required under the state substantive law governing their claim. The court also declines to exercise its discretion to assert supplemental jurisdiction over plaintiffs' state law fraud claim. Because of the persistent deficiencies in both the original and amended complaints as to the federal claims, any further amendments to plaintiffs' amended complaint appear futile or inequitable. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). Consequently, the court will dismiss plaintiffs' amended complaint with prejudice as to the federal claims, but without prejudice to the right of plaintiffs to proceed in an appropriate state court on their state law claims.[11]

---

[11] The court will dismiss as moot the Rule 12(b)(5) motion to dismiss, the motions to dismiss for failure to file certificates of merit, and the motions for a more definite statement pursuant to Rule 12(e).